May it please the Court, I'm Judith Wood, re-representing the Mortiz-Moreno case. This case has gigantic proportions, in my opinion. The U.S. Supreme Court in Cardozo-Van Seca held that a 10% likelihood of persecution is enough for an asylum case, and they did not make any distinction between male and female applicants. And yet we find that now women are being left out of the sphere of asylum by various cases, recent cases. Women are limited in their access to political opinion because of the oppressive regime in which they find themselves in Central America. Often the only way that they can express themselves politically is to escape an abusive domestic situation, which is fortressed by the dominant male society in which they live. When a woman does manage to escape, her opinion is often silenced, punished, or mitigated, many times, as in Honduras, where women are killed for trying to escape from a horrifying situation. In this case, Ortiz-Moreno left the abusive domestic relationship only after being beaten repeatedly and threatened with death. Then she returned to Honduras only to rescue her female child, who was also being beaten and abused and threatened by the same abuser, the father of the child. When Ortiz returned to see the child, the abuser showed her a gun and said, this is for you. He threatened to kill Ortiz, the child, and her parents. But bravely, Ortiz remained until she was able to rescue the child. She was only able to rescue the child because the abuser fled the scene, fearing being harmed by gangs. She thus seized the moment and came to the United States. However, in the hearing, the immigration judge misstated the facts in both the first and second opinions. The judge stated, Jose never hit her or physically abused her. And yet, in the transcript, the judge says, quote, you believe this man, who you don't trust, who beat you and your daughter all the time. So the judge herself repeated the fact that Ortiz-Moreno was beaten by this man. The judge found that there was no- Even if this particular social group is cognizable, can you talk about the nexus finding that the BIA made? Well, in the nexus finding, they talk about circular reasoning. If someone is abused on account of what group they happen to be in, that's self-defining, and therefore it doesn't have a nexus. I disagree with that reasoning, and so do several of the circuits, the Seventh Circuit and the Fourth Circuit. But looking at it from another angle, if someone is persecuted on account of their social group, that should be enough. There shouldn't need to be some other reason why they're persecuted in order for that person to be eligible for asylum. Going on, the case was remanded by the board. Well, if you change the social group slightly to be women as opposed to women who are abused, doesn't that solve your nexus problem? Well, I don't think that every single woman is a member of a social group. Yet we do have a case that found women in El Salvador. And women in Mexico and women in Guatemala. So, I mean, we do have some decisions in the circuit that say that. Right. And yet women who stand up for their rights are distinct from all women. Women who stand up for their rights in one way or another. In this case, she left and came back bravely to rescue a female child. I think the court should take into account the gender of the child, because the child was being abused as well, the female child. So it's not only the wife, it's also the daughter. And both of them are part of a social group. Also, there's been testimony in this case that the abuser had several women and had abused all the women. Not all, but many of the women in his life. Had beaten them, had subjected them to severe violence. So she's a member of a social group, in a narrow social group insofar as she's a part of this rather dysfunctional, to say the least, family in which the women are abused. So, I mean, you're indicating that there were many people that he was abusive to in his life that's in the record. How does that not just establish that he is a bad person? Well, the reason why I'm saying that, Your Honor, is because the judge said he just abused her because she's his wife, quote, unquote. But actually he was abusing women, because women in that context who are abused more or less wear a badge. Okay, I've been abused. I'm not going to protect myself. Go ahead and abuse me again, because I know that no one is going to help me. That's the social group. Say again what social group you're arguing we should find in this case. Women who actually are able to stand up courageously and be able to leave a situation. But in this situation, she didn't just leave. She went back again, risking her own life to rescue her daughter, who was also being abused. So the articulation of your social group is women who stand up to their abusers? Yes, and try to escape, and then are threatened, whose lives are threatened on account of trying to escape. And was that articulated below to the agency? It is not clear from the record that that was clearly delineated. It was said. It was written. However, if this case goes forward, it will definitely be more narrowly enunciated. The first social group that was defined was women from Central America fleeing their abusive partners. However, this case presents other nuances insofar as she was able to leave, she went back to rescue a child who was basically not going to make it much further. The child was very sick, which was the only reason. And the child testified. The judge totally discounted the child's testimony. The child testified that the abuser had told the child that he was going to kill the mother and also threatened the child's life if the child took phone calls from the mother. While the mother was in the United States, after she left the first time, she sent money to the home in Honduras. I'm still struggling to see the connection or the nexus between your articulated particular social group and the harm that's in the record. So the harm, how does the harm to the child connect to the social group that you've just articulated? The child is also a female. The child happens to be a female, and she's being persecuted by the same male person who persecuted her mother. So this abuser tends to abuse vulnerable females in his surroundings. She's a part of that group. So it seems from the argument that you're making that the only immutable characteristic that you think applies is just gender. Is that fair? Well, gender is the main, but she's also in a domestic relationship with him. She's been with him, although not legally married, for four years. He's the father of her child, so they're definitely in a domestic situation. And he asserts authority over the child, telling her that, in fact, she can't, when she goes first, when she first goes back to Honduras and wants to rescue the child, the father says, no, you don't have custody, I'm not letting you take this child. The only reason why she was able to rescue the child is because the husband was afraid that he was going to be killed by the gang. So in that moment, she grabbed the child and left, was able to actually leave the country. I'm going to keep some time for rebuttal, Your Honor. All right. Thank you. Thank you. May it please the Court. Rebecca Hoffberg Phillips on behalf of the United States Attorney General. This Court should deny the petition for review. There are two dispositive bases to do so. One is the nexus issue that has been raised, and one is the particular social group issue. Those are each dispositive basis, whether it's a cognizable social group. I want to start with nexus, which was just brought up, because I'll say, even assuming, and we're not agreeing to that, but even assuming this is a social group, let's look at the nexus. The problem with Petitioner's argument about nexus is that the harm to Petitioner herself does not qualify because of the way she defined her group. So she looked to the daughter's harm. So, in other words, the harm to herself predates her fleeing. Her social group is Central American women fleeing abusive partners or husbands. She couldn't have been harmed on account of that ground if the harm predates her fleeing, which was the 2004 to 2008 harm to herself. So I don't understand that argument. I mean, ARCG said people are unable to leave or constitute a particular social group. So what exactly are you saying, that you have to stay in the abusive situation, in which case you'd never get to the United States, so you couldn't have an asylum claim? No, Your Honor. First of all, she was able to leave. And, in fact, her abuser wanted her to leave, page 319 of the record. He called her fat, ugly, I want you to leave. She fled, but he wasn't preventing her from leaving. So I just want to start by saying that this is not an ARCG case. It never really was. Wait, I don't understand ARCG. Yes. I mean, you're not going to be in the United States making an asylum claim if, in fact, you are unable to leave. Your Honor, that case, married women unable to leave, I want to say that— I'm just saying, obviously, ARCG fled because—so I don't see that that's a distinction from this case, because she wouldn't be in the United States making an asylum claim if she actually was stuck wherever, what country she was in, ARCG. Right. Well, as you know, Your Honor, that case has since been overturned by matter of— Well, not really. I think, wasn't there a case that nullified AB? You're saying nullified it? Or enjoined it or something. Oh. Well, Your Honor, AB doesn't need to be applied to this. I know. We're talking about ARCG. Right. So what distinguishes this case from ARCG? What distinguishes this case from ARCG? Okay. So assuming that, again, unable to leave— Unable to leave can't be the distinction because, obviously, ARCG was here, so she left. So the way that she defined her particular social group was up to her. She defined it as women fleeing abusive partners or husbands. So we have a number of these cases today. Yes. Are you arguing all of them? I'm arguing—yes. Though the third one was submitted on the brief. The second one I am also. You're arguing both? Okay. So maybe a bigger question. Yes. What particular social group regarding domestic violence is the agency willing to recognize? I mean, we have ARCG that was recognized. Right. We have our own decision, a couple of decisions, women from Mexico, women from El Salvador. And as your Honor is saying, actually, it's women, right? So she's trying to change her group now. Women from these countries, women from this country. I think you brought it up before. The problem with putting domestic violence in the definition of a particular social group is it becomes circular. So the violence is what—how do you do a nexus to violence? Well, there's a victimhood. Right. There's a victimhood in this. Right. Right? So I want a positive answer from you. Like what does the agency recognize in these category of cases as a particular social group? Anything that meets the definition of the particularity, social distinction, and immutable characteristics. Okay. So give me a concrete example. Do you stand by ARCG setting aside AB for a minute? Well, ARCG did not evaluate the MEVG and WGR criteria that I just mentioned. There was a concession by the government in that case that said, we're going to agree that this is a particular social group. But do you stand by that concession? No, Your Honor. The government in that particular case made a concession, and the Attorney General said, you have to evaluate the criteria. You can't just concede that this is or is not a social group. You have to go through the criteria. So the problem in that case was that the MEVG-WGR criteria was missing. And that's what the Attorney General was saying. He never said domestic violence can't be a particular social group. So it can be. I'm saying that it has to be articulated as the social group, and then it has to be evaluated under the MEVG-WGR standards. That didn't happen in ARCG. Correct. Let's do that. So we had women. This group was women in Central America fleeing abusive partners or husbands as a particular social group. Right. And she defined it as Central American women. So the whole bunch of countries included in that. And so, again, you know, this was also – Are there distinctions among the countries in Central America regarding domestic violence with respect to women? That would be something to show, Your Honor, in terms of, I mean, lumping a whole bunch of countries. I'm asking you the question. Yeah, I mean, it would be evidentiary-based. It's a fact-based inquiry. You'd have to look at – Okay. What about Honduras? You're saying – This woman's from Honduras. Yes. But she is limited to Honduras. So in this case, there was no social distinction finding that was adopted by the board. It was a particularity finding by the board. So in this case, what the board did was say – looked at the terms used and said, you know, what does it mean to – first of all, abusive doesn't necessarily mean domestic violence. I want to start with that. She's changing her group, okay? So she said abusive. So abusive could mean any forms of abuse. And, in fact, she's bringing her daughter into it now, too. The daughter, you know, has a different set of circumstances going on. What I'm saying is that – Wouldn't characterize those circumstances as abusive? No. What I'm saying is that domestic violence is different than characterizing a group just based on abusive. It could be abusive to a non-domestic person. But you have to look at it in the context of this case and the testimony in this case. But, Your Honor – You'd say that, in this case, there was not abusive behavior between the husband and the wife and daughter? There was abusive behavior. The question is whether that was on account of a protected ground. And the abuse describes the harm, which makes it – that's part of what makes things circular. It's not the basis for denying the petition for review here. But you see sort of the problem with that because it describes the harm. Here's what happened to me, so I deserve, you know, protection and asylum. It's just describing your own circumstances, and it's reversing the cause and effect. What caused the harm? What was – and so the social group has to exist before the harm. So that's the problem with using her own domestic violence circumstances is that that – her group is based on her fleeing, and it predates that. So how could it be on account of her fleeing if she hadn't fled? So this is the problem. They all have to flee in order to make an asylum claim. Yes, but their group, if it's based on fleeing, if that's how they articulate the group, and she's had counsel throughout, and actually counsel had two chances to raise any number of groups before the immigration judge. This case was actually remanded previously specifically because the board said, you're focusing too much on ARCG here. Let's look at the group that she's presenting to you. And so counsel – you must find her credible on remand, right? Yeah, the board said that too. And the board asked the IJ to relook at the groups, basically evaluate the criteria for the group that she was raising. And this court is – The testimony is true. Assuming the testimony is true, exactly. And so this is a fact-based inquiry. You can raise any number of particular social groups before the immigration judge. There's no limit. This was the group that she chose to raise. And so what is your take on the petitioner's argument that we can now sort of restyle the group at this point? Our position is that you cannot. Our position is that it must be raised. This court recognized in Honcharov recently that the board has a decision, WYC, which specifically talks about delineating a group before the agency so that the court has a proper record upon which to base a decision. It is entirely fact-based. So every time you articulate a group, all the facts surrounding that have to be developed in the record in terms of the country conditions and societal distinction. And so you cannot change a group for the first time on appeal. As this court recognized in Honcharov, even the board can reject a group that is mutated, that wasn't raised before the IJ. That's not what happened here, but what I'm saying is how important the factual inquiry is, is that it has to be developed on a factual record before the IJ. Now, in this case, the group was the one that she articulated, and that's what was decided. And the court should not lop off or provide surgery to this particular social group and now evaluate just women or just domestic violence. That's not what was raised. Again, she's had counsel throughout and two chances before the immigration judge to raise as many groups as she would like to raise. I see my time is running out, and I just want to add that there is an alternative, no well-founded fear conclusion here. And so remand would actually be futile because the board made an alternative finding that because her abuser has not been heard of for years and went into hiding, that she does not have a well-founded fear of persecution, and remand would be futile in this case anyway. I see that my time is up, and I'm happy to answer any additional questions if the court has any. No, thank you, counsel. Your time is up. Thank you, Your Honors. With all due respect, I just want to correct the government attorney who said that the harm occurred only before she left the first time. Actually, when she went back to rescue her child, the husband threatened her life again by showing her a revolver and saying that, this is for you, and also saying that he intended to kill her, the daughter, and himself, and the appellant's parents. Let me ask you something. Yes. If we were to remand this, would you redefine? Is that what you wanted to do, is redefine the social group? Well, I would. Matter of AB, as you're familiar with, is the case that said that you can't redefine the social group. But this case comes before AB. This case was heard way before AB. And therefore, if the case is remanded, I will narrow the social group, yes. Who would you narrow it to? I would narrow it to Honduran women who have fled an abusive relationship and who fear for their lives and for the lives of their female children. So is it your position that the rule about the court not being able to restyle a group didn't happen or didn't get announced until AB? Well, it was quite definitive in Attorney General Sessions' decision. Sure, but did it exist before that? No. You could have argued a different social group later on. So you're saying because AB changed the law, we should remand it? Well, I think you could remand it for a grant of asylum as well as the reason that you just articulated. Well, I think, I mean, we're considering a lot of these cases today, and this group does seem somewhat broad in its definition, and you did have a chance to narrow it before. I would, if the case gets remanded, I would narrow the group, yes. All right. Does anybody have any other questions? Okay. All right. Thank you, counsel. Thank you. Moreno v. Barr will be submitted.
judges: Wardlaw, Nguyen, Hunsaker